UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHRYN ASBURY, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 4:20-cv-01793-SRC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social | ) |
| Security[1], | ) |
| | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Kathryn Asbury requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85.  The Court affirms the Commissioner's decision.

**I.     Procedural history**

In January 2018, Asbury filed an application for disability insurance benefits and an application for supplemental social security income.  Tr. 197–200, 203–06.  The Social Security Administration initially denied her applications, but Asbury asked for a hearing before an Administrative Law Judge ("ALJ") and testified at the hearing.  Tr. 115–26, 61–80.  After the hearing, the ALJ denied both of Asbury's applications, Tr. 19–28, and the Appeals Council

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

denied Asbury's request for review, Tr. 1–3. As such, the ALJ's opinion stands as the final decision of the Commissioner.

## II. Decision of the ALJ

The ALJ determined that Asbury met the insured-status requirements of the Social Security Act through September 30, 2015, and that Asbury had not engaged in substantial gainful activity since September 1, 2015, Asbury's alleged onset date. Tr. 21. The ALJ found that Asbury has severe impairments of "status post right rotator cuff repair, chronic pain syndrome, degenerative disc disease of the thoracic spine with radiculopathy, degenerative disc disease of the cervical spine with cervicalgia, and osteoarthritis of the right shoulder." Tr. 21–23. The ALJ further found that Asbury does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23–24.

After considering the entire record, the ALJ determined that Asbury has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), within the following parameters: she can lift and carry twenty pounds occasionally and ten pounds frequently; she can sit for six hours, stand for six hours, and walk for six hours in an eight-hour workday; she can occasionally reach overhead using her right upper extremity; she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; she can frequently balance and kneel, and occasionally stoop, crouch, and crawl; and she can work in extreme cold and in vibration frequently. Tr. 24.

Finally, the ALJ found that Asbury is capable of performing her past relevant work as a behavioral science specialist, which does not include work-related activities precluded by Asbury's RFC. Tr. 27. Accordingly, the ALJ found that Asbury was not disabled, as defined in

the Social Security Act, 20 C.F.R. §§ 404.1520(f), 416.920(f), between September 1, 2015 and December 27, 2019, the date of the ALJ's decision. Tr. 28. Asbury appeals. Docs. 1, 21.

### III.    Legal standard

Under the Social Security Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1).[2] First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(c)); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work

---

[2] For brevity, the Court omits citations to certain corresponding Title II regulations. *See, e.g.*, 20 C.F.R. § 404.1520(a)(1).

activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (citation omitted). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If the Commissioner determines that the

4

claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id*.  At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).  "[T]he threshold for such evidentiary sufficiency is not high." *Id*.  Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id*.  The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'"  *KKC ex*

5

*rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

**IV.     Discussion**

Asbury argues that the ALJ erred in evaluating and relying on prior administrative medical findings, Doc. 21 at pp. 3–6, and in evaluating Asbury's subjective complaints of pain, *id.* at pp. 6–9.

> **A.     The ALJ properly evaluated and relied on prior administrative medical findings as part of the ALJ's RFC finding.**

Asbury argues that the ALJ's determination was not based upon the full record because the ALJ's decision "mirrors" Dr. John Marshall Jung's assessments, which took place approximately seventeen months before the hearing. Doc. 21 at pp. 3–5. Asbury says that Dr. Jung never examined her, and that his assessments offered "little actual information of how the evidence supports his conclusions." *Id.* at p. 4. Asbury also argues that the ALJ failed to explain how Dr. Jung's opinion was either supportable by the objective medical evidence or consistent with the remaining evidence of record, as the regulations require. *Id.* at pp. 5–6; 20 C.F.R. §§ 416.920c(a)–(c). Accordingly, Asbury contends, the ALJ's reliance on Dr. Jung's findings was improper. Doc. 21 at p. 5.

As an initial matter, Asbury simply misstates the law. Rather than according various "weight[s]" to medical opinions or administrative medical findings, as Asbury contends, Doc. 21 at p. 3, the Commissioner's regulations provide that, for claims filed on or after March 27, 2017, ALJs will not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 416.920c(a). Instead, ALJs must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of several factors, the most important of which are supportability and

consistency with the record. *See* 20 C.F.R. §§ 416.920c(a)–(c) (in evaluating persuasiveness, ALJ should consider supportability, consistency, relationship with the claimant—which includes length of the treatment relationship, frequency of examinations, examining relationship, purpose and extent of the treatment relationship, specialization, and other factors). ALJs must explain how they considered the factors of supportability and consistency in their decisions, but need not explain how they considered the other factors. 20 C.F.R. § 416.920c(b). Asbury filed her applications in February 2018, Tr. 197–200, 203–06, and thus the new regulations apply.

Dr. Jung's assessments constitute "prior administrative medical findings" under the regulations, and the Court thus evaluates the ALJ's reliance on them, in large part, based on their level of supportability and consistency with the record. *See* 20 C.F.R. § 404.1513(a)(5) (defining "prior administrative medical finding" as "a finding . . . about a medical issue made by . . . Federal and State agency medical and psychological consultants at a prior level of review . . . based on their review of the evidence in [the claimant's] case record"); 20 C.F.R. § 416.920c(b)(2) (explaining that supportability and consistency are the "most important factors" for evaluating the persuasiveness of a medical opinion). Thus, under the applicable regulations, that Dr. Jung is a nonexamining physician whose assessments are dated seventeen months before the ALJ's decision is irrelevant to the question of whether the ALJ permissibly relied on those assessments.

And Asbury's reliance on *Frankl v. Shalala*, 47 F.3d 935 (8th Cir. 1995), for the proposition that an ALJ "cannot rely on a non-examining physician's RFC when the agency RFC assessments, completed almost a year prior to the hearing, were not based on the full records," *id.* at 938, is misguided. As noted above, the old regulations do not apply to Asbury's claims. *See* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight,

7

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); *Feldhaus v. Saul*, No. 19-CV-2249, 2020 WL 5594062, at *5 n.1 (E.D. Mo. Sept. 18, 2020) (noting that "[f]or claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated"). Further, even if the passage of time between the date of the Dr. Jung's assessments and the date of the ALJ's decision was relevant to the analysis—which it is not—Asbury points to no new evidence in the intervening seventeen-month period that could arguably render the ALJ decision not supported by substantial evidence.

Next, Asbury argues that the ALJ erred in finding Dr. Jung's findings persuasive. Doc. 21 at p. 6. Asbury asserts that the ALJ's evaluation of Dr. Jung's assessments does not provide an adequate explanation of how the diagnoses listed support Dr. Jung's opinions or findings. *Id.* As to Dr. Jung's assessments themselves, Asbury contends that "Dr. Jung does not provide an adequate explanation of how the evidence that he was able to review supported the limitations found." *Id.*

Dr. Jung produced two separate assessments dated three days apart—one for Asbury's Title II claim, and one for her Title XVI claim. Tr. 90–99; 101–114. Asbury argues that Dr. Jung provided little or no explanation for how the medical record supported his findings. Doc. 21 at p. 6. The Court disagrees. Though Asbury's period of entitlement regarding her Title II application only covered one month and comprised three pages of the medical record, Dr. Jung detailed the relevant medical findings and diagnoses, as well as Asbury's allegations, and articulated the basis for his medical conclusions. Tr. 26, 94–95. And regarding Asbury's Title XVI claim, Dr. Jung reviewed voluminous and detailed medical records from multiple health providers and hospitals—including treatment notes, MRI scans, and X-rays—and based his

8

assessments on those records. Tr. 105–12.  Dr. Jung made specific determinations regarding Asbury's RFC, covering Asbury's exertional, postural, manipulative, and environmental limitations.  Tr. 108–10.   For each criterion, Dr. Jung cited to specific facts in the record to support his determination.  *Id.*  For example, in determining Asbury's exertional limitations of standing and/or walking for six hours (with normal breaks) in an eight-hour workday, sitting for six hours (with normal breaks) in an eight-hour workday, upwardly pulling load of no more twenty pounds, and frequently uploading loads of no more than ten pounds, Dr. Jung considered: (1) Asbury's history of spinal surgery; (2) her scoliosis of the thoracic spine; (3) her degenerative disc disease of the cervical spine; (4) her degenerative joint disease of the shoulder; and (5) her recent rotator cuff repair.  Tr. 108–09.  The ALJ found Dr. Jung's assessments supported by the record and thus persuasive.  Tr. 26.

As noted above, Dr. Jung's conclusions logically corresponded to an abundance of medical records, and the ALJ duly noted that fact.  Tr. 26.  And whether Dr. Jung's treatment notes supported his opinion is inapplicable because Dr. Jung never examined Asbury.  Thus, with respect to the supportability factor, the Court finds that the ALJ did not err in finding Dr. Jung's assessments persuasive.

Turning to the consistency factor, the ALJ found Dr. Jung's assessments persuasive because they were consistent with the record as a whole.  Tr. 26.  In particular, the ALJ cited to specific medical records that were consistent with Dr. Jung's conclusions because they similarly showed a reduced range of motion in the spine, requiring treatment with a pain management specialist.  Tr. 26, 450–53, 683–86, 694–97, 724–27, 787–92, 1080–82.  Thus, because Dr. Jung's assessments were consistent with the record, the Court finds that the ALJ properly attached a high level of persuasiveness to Dr. Jung's determinations.  *See* 20 C.F.R. § 416.920c

9

(2017) ("The more consistent a . . . prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the . . . prior administrative medical finding(s) will be.").

The Court concludes that the ALJ properly evaluated and relied on the prior administrative medical findings of Dr. Jung as part of the ALJ's RFC finding.

**B.     The ALJ properly evaluated Asbury's subjective symptoms**

Asbury also argues that the ALJ failed to make an express credibility determination and improperly evaluated Asbury's subjective symptoms. Doc. 21 at pp. 6–9. Before the Social Security Administration issued Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017), ALJs assessed a claimant's *credibility* by considering: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (setting out the *Polaski* factors); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The *credibility* of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (emphasis added). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's *credibility* determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) (emphasis added).

Social Security Ruling 16-3p eliminated "use of the term 'credibility'" and instructs ALJs "to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms," consistent with applicable regulations. The Eighth Circuit analyzed the impact of Social Security Ruling 16-3p in *Lawrence v. Saul*:

10

> In Polaski and cases that followed, we examined subjective complaints with reference to a claimant's credibility. Social Security Ruling 16-3p eliminates use of the term "credibility" and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole. . . . [I]t largely changes terminology rather than the substantive analysis to be applied.

970 F.3d 989, 995 n.6 (8th Cir. 2020).

The Court rejects Asbury's claim that the ALJ failed to expressly determine her credibility. While Asbury uses the word "credibility" as a shorthand for the ALJ's evaluation of the level of consistency between Asbury's subjective assertions and the balance of the record as a whole, Doc. 21 at p. 6, the Court uses the regulatory language. The regulations and Social Security Ruling 16-3p require consideration of the reported symptoms and the extent to which they "can reasonably be accepted as consistent with the objective medical evidence and the other evidence." 20 C.F.R. § 404.1529(a).

In Asbury's view, that she can prepare simple meals, perform household chores, grocery shop, drive, manage money, read, and care for her mother and adult autistic son does not provide substantial evidence to support the ALJ's finding that Asbury has the RFC to engage in substantial gainful activity, and thus is not disabled. Doc. 21 at p. 7. Asbury further contends that the ALJ only considered Asbury's daily activities, and failed to consider the other factors enumerated in the regulations. *Id.* at p. 8; 20 C.F.R. § 404.1529(3). The Court disagrees.

"While ALJs must acknowledge and consider these so-called *Polaski* factors before discounting a claimant's subjective complaints, [the Eighth Circuit] ha[s] held that ALJs 'need not explicitly discuss each *Polaski* factor.'" *Id.* (quoting *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)). Additionally, "ALJs may discount claimants' complaints if there are inconsistencies in the record as a whole, and '[courts] will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing

11

so.'" *Id.* (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)); *see also Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) ("An ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).

Here, the ALJ properly considered ALJ's subjective complaints of pain in light of the *Polaski* factors. The ALJ began the analysis by considering Asbury's hearing testimony that she has significant physical limitations that prevent her from engaging in substantial gainful employment, stemming from pain in her right shoulder and subsequent shoulder surgery. Tr. 24, 66. The ALJ then evaluated Asbury's testimony that, following her surgery, she developed significant mid-back pain and that her pain worsened whenever she was upright, causing her to spend eighty-five to ninety percent of the day lying down. Tr. 24–25, 67–71. Finally, the ALJ considered Asbury's reports of regular trigger point injections and treatment with Tramadol, Meloxicam, and a muscle relaxant for pain relief. Tr. 25, 68.

The ALJ explained that Asbury's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent because they are not supported by the objective evidence." Tr. 25. The ALJ noted that Asbury receives between fifty to ninety percent pain relief from the injections and oral medication. Tr. 25, 928, 938, 944. The ALJ also considered Asbury's broad range of activities of daily living, including preparing simple meals, performing household chores, grocery shopping, driving, managing her money, pleasure reading, and caring for her mother and autistic son. Tr. 25. The ALJ also noted that when Asbury first filed her benefits applications in February 2018, she cited caring for her family members—but not her medical impairments—as a reason for leaving work. Tr. 25, 232.

12

The ALJ considered not only Asbury's activities of daily living, as Asbury contends, but also other *Polaski* factors such as the location, duration, frequency, and intensity of Asbury's conditions, stating for example that:

> Although the claimant testified that she stopped working in September 2015 due to shoulder pain and a subsequent shoulder surgery in 2016, the record indicates that the claimant first complained of right shoulder pain in April 2016 that eventually was diagnosed as a right rotator cuff tear and surgically repaired in July 2017. [Tr. 311–12, 395–96, 544–47]. Also, in April 2016, the claimant began complaining of neck pain. [Tr. 507–11]. An April 2016 x-ray of the claimant's cervical spine revealed mild degenerative changes at C5-6. [Tr. 507–11]. In October 2017, the claimant reported moderate thoracic pain, and a December 2017 MRI revealed a bulging disc at T7-8. [Tr. 385–86].

Tr. 25. Additionally, the ALJ considered precipitating and aggravating factors, including that Asbury declined to engage in physical activity, pain psychology and/or physical therapy for fear of worsening her pain. Tr. 25, 694–97, 724–27. And the ALJ considered the type, dosage, and effectiveness of her medication regimen, as well as treatments other than medication, emphasizing evidence—including Asbury's own reports to multiple providers—indicating that the combination of Asbury's medication regimen and trigger-point injections relieved her pain. Tr. 25. As mentioned above, the ALJ noted that the objective medical evidence indicated that this combination reduced Asbury's pain by fifty to ninety percent. Tr. 25, 68, 925, 928, 938, 944, 948, 952, 956, 972, 980.

Accordingly, the Court concludes that the ALJ did not err in finding that Asbury's statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the objective medical evidence. *See Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010); *see also Vance v. Berryhill*, 860 F.3d 1114, 1120–21 (8th Cir. 2017) (finding that the ALJ properly considered the objective medical evidence in assessing a claimant's subjective complaints).

V.      **Conclusion**

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  It does not substitute its own judgment for that of the ALJ.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)).  Having found that substantial evidence supports the ALJ's conclusions and that the ALJ applied correct legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Asbury's [1] Complaint with prejudice.  A separate judgment accompanies this Memorandum and Order.  The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant in this suit.

So Ordered this 29th day of April 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE